[Crim. No. 2920. Second Appellate District, Division One.—December 11, 1936.]

THE PEOPLE, Respondent, v. HARRY KAZATSKY, Appellant.

Nathan O. Freedman, A. Wm. Christlieb and Adolph Alexander for Appellant.

U. S. Webb, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

HOUSER, P. J.—Defendant appeals from a judgment of his conviction of the commission by him of the crime of grand theft; also from an order by which his motion for a new trial was denied.

Owing to the nature of the questions which are presented in appellant's brief, it becomes necessary to set forth somewhat in detail the evidence upon which the judgment depended. According to testimony that was given by one Young, some time prior to the date when the alleged offense for the commission of which defendant was prosecuted occurred, one Nathan Kay, who is a brother of defendant, procured Young to join with him in staging a pretended accident that when consummated was intended to appear to have taken place between defendant, personally, and an automobile that was to be operated by Young, and on account of which, in accordance with the provisions of a policy of insurance, defendant was proposed to be compensated, of which compensation, as his share thereof, Young was to receive "two or three hundred dollars". To that end, on or about April 12, 1935, Kay, defendant, Young and Young's wife, all riding in an automobile that was driven by Young, approached the intersection of Market and San Pedro Streets in the city of Los Angeles. At that time and place Kay said, "Stop here! This will be a good place." Young then drove his automobile to the curb, where it was stopped. Kay then told Young that defendant was "supposed" to be crossing the street at that time and place, and that the automobile which Young was driving was "supposed" to have collided with defendant; that if questioned, Young should say that he drove his automobile past the intersection, stopped at the curb, and then returned and helped defendant into the automobile, and that while he was doing so, defendant was moaning. Kay also gave Young directions to proceed to a hospital. At no time during the happening of the pretended accident did defendant alight from Young's automobile. In addition thereto, Kay told Young in detail what he should say with respect to the happening of the accident, and in what manner and substance he should make his report of the accident to the police department and to the insurance company, all of which was literally carried out by Young. During all the time after

Young's automobile had stopped at the curb in the proximity of where the ''accident'' was pretended to have occurred, defendant had been continuously moaning and groaning. The testimony that was given by Young's wife was to the effect that when the automobile in which Kay, defendant, Young and she had been riding had reached the intersection of Market and San Pedro Streets, Kay said, ''That is where it is going to happen.'' Before the money was paid to defendant in compensation for the injuries which he was pretended to have received, Mrs. Young made a false report of the ''accident'' to the insurance company. At that time she knew that her husband was to be compensated for what he had done in the matter. In effect, her report was corroborative of the report and the several statements which theretofore had been made by Young.

Each of the three doctors who had either specially examined defendant with reference particularly to his ''injuries'' or had cared for him during the time that he was apparently convalescing therefrom, testified that although no contusions or bruises were discovered on defendant's body, a laboratory test of his urine disclosed the presence of blood and pus therein. In addition thereto, one of the doctors found a marked tenderness of the right lumbar region and rigidity of the right rectus muscle, ''and all the symptoms that you find when there is an injury with a blunt thing— with a rod or—or when somebody gets bumped up in the lumbar region''. Each of two of said doctors testified that defendant told him that he had been run over by an automobile at some crossing on San Pedro Street; that he was crossing the street and the man who injured him brought him to the hospital. Defendant also told one of the doctors that he could not pay him; that he could neither pay him nor the hospital, but that the doctor would have to wait for his compensation until the man who injured defendant paid the damages.

Defendant compromised his ''claim'' against the insurance company by accepting from it the sum of $1300;—$300 of which was paid directly to his attending physician. Testimony also was given by a policeman, in substance, that in the course of a conversation which he had had with defendant at the time when he was arrested, which time was about fourteen months after the alleged accident had oc-

curred, he had stated to defendant that, "We know that there was no accident at Market and San Pedro Street." To which defendant had replied that, "I don't know what it is all about, I have nothing to say."

 Appellant's points for a reversal of the judgment include two main propositions: that is to say, first, that the prosecution failed to establish the *corpus delicti;* and secondly, that the testimony that was given by the two accomplices was not corroborated, as is required by the provisions of the governing statute in that regard. In that connection, it is tacitly admitted by respondent that both Young and his wife were accomplices to the commission of the crime.

The pertinent part of section 1111 of the Penal Code is as follows:

"A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

The question of whether any crime was committed and that of whether, in the light of the evidence only, defendant was guilty of the commission of any criminal offense, are so inseparable one from the other, that a conclusion as to the one is necessarily decisive of the other. Those questions, therefore, will be considered as one.

From a consideration of the evidence that was adduced on the trial of the action, it becomes evident that the ultimate and decisive fact necessary to establish the *corpus delicti* and to support a judgment of conviction is that neither at the time nor place at which defendant asserted that he was injured and on account of which he was paid compensation, did any accident occur in which defendant participated and in which he received or sustained an injury. Both the accomplices directly and positively gave testimony to the effect that no accident occurred; but, in accordance with the terms of the statute, the testimony of an accomplice to a crime is not sufficient in itself to support a conviction. It therefore becomes necessary to search the record for some sufficient corroborative evidence that may "tend to connect the defendant with the commission of the

crime''. In that regard, it may be remembered that herein-before, in setting forth a general synopsis of the evidence, reference was made to that given by certain physicians. As far as the point here under consideration is concerned, in brief, it was to the effect that, although within a very short time that succeeded the happening of the ''accident'' they had made a physical examination of defendant for the purpose of ascertaining the extent and the character of his asserted injuries, neither of them could or did discover either a bruise or a contusion upon the person of defendant.

Although to the mind of a layman it might be but a fair inference that one who has been struck by an automobile sufficiently hard to cause him to ''moan and groan'' and to lose consciousness for a considerable period and immediately thereafter to emit blood and pus in his urine, will bear upon his person some outward sign thereof by way of a bruise or contusion, no physician gave testimony to that effect. To the contrary, notwithstanding the lack of physical evidence of any bruised or contused condition, the testimony that was given by the physicians was confirmatory of the fact that defendant had been injured; at least, it was not corroboratory of the testimony that was given by the accomplices to the effect that no accident had occurred.

The only other evidence that is contained in the record from which it is argued by respondent that the necessary corroboration was presented, is that which was given by a policeman to the effect that at the time when he arrested defendant he stated to defendant that ''we know there was no accident''; to which remark defendant responded that he ''didn't know what it was all about and that he had nothing to say''. In that regard, it is asserted that the statement then and there made by defendant constituted a ''conflicting version of the alleged accident as given by appellant to several persons''. But respondent fails to point out the particulars of such asserted conflict. A search of the record herein discloses that at all times following the date of the alleged accident defendant made the statement, in substance, that he did not remember being struck; nor seeing the car that struck him; in fact, that as he walked across the intersection and after he had passed the center of the street, within the sidewalk lines, the first thing he knew thereafter was when he regained consciousness in the hospital. In

the circumstances connected with his arrest, the fact that he had "nothing to say" in response to the statement made by the arresting officer did not constitute an admission that "no accident occurred".

With respect to the proper method to be employed in reaching a correct conclusion as to whether testimony that has been given by an accomplice of a defendant has been corroborated in the manner and to the extent required by the provisions of section 1111 of the Penal Code, the case of *People* v. *Morton,* 139 Cal. 719 [73 Pac. 609], is instructive. In that regard, the court adopted the rule suggested in the case of *Welden* v. *State,* 10 Tex. Crim. App. 400, as follows, to wit: "Eliminate from the case the evidence of the accomplice, and then examine the evidence of the other witness or witnesses with the view to ascertain if there be inculpatory evidence—evidence tending to connect the defendant with the offense. If there is, the accomplice is corroborated; if there is no *inculpatory* evidence, there is no corroboration, though the accomplice may be corroborated in regard to any number of facts sworn to by him."

And since that time that rule has been recognized as a correct interpretation of the law in many cases in this state, notably, in *People* v. *Davis,* 210 Cal. 540 [293 Pac. 32], and *People* v. *Kempley,* 205 Cal. 441 [271 Pac. 478].

In applying that rule to the evidence in the instant case, and therefore at the outset eliminating from consideration testimony that was given by the accomplices, nothing of an unequivocal incriminating nature remains. As hereinbefore has been indicated, in order to sustain a judgment of conviction, the controlling fact to be established by the prosecution was that "no accident occurred"; but the fact necessary to the drawing of even a layman's inference that defendant received no injury failed to be established; and considering the evidence, or the lack thereof, had such an inference been possible, a conclusion that there had been no accident, necessarily would have had to rest upon another inference; that is to say, it first would have been necessary to infer that because defendant's body showed no bruises or contusions he had not been injured; and secondly, to infer that because he had received no injury, no accident had occurred. That sort of reasoning is unwarranted in the law. (Secs. 1958, 1960, Code Civ. Proc.; *Robbiano* v. *Bovet,* 218

Cal. 589, 599 [24 Pac. (2d) 466]; *Tucker* v. *City of San Francisco*, 111 Cal. App. 720, 726 [296 Pac. 101].)

The remaining contention on the part of the prosecution, in substance, that defendant's "failure to answer an accusatory statement in itself constitutes an admission tending to connect a party with the crime charged", is inapplicable to the facts herein. It is clear that the statement that was made by the arresting officer, that "we know that there was no accident", called for no reply. The statement was not directly accusatory in form; to the contrary, before defendant could have understood that he was thereby accused of the commission of a criminal offense, it would have been necessary that he indulge in a course of reasoning of facts as he understood them to exist, coupled with law as applying thereto. As is stated in *People* v. *Davis*, 210 Cal. 540, 553 [293 Pac. 32]: "before the failure of a person to deny a statement of fact can be received as evidence of an admission of guilt or of consciousness of guilt it must appear that he understands that he himself is accused of the criminal act". (Citing authorities.)

Viewing the entire record, the most that appears in connection with the necessary proof of corroboration of the testimony that was given by the accomplices is certain evidence that suggests a suspicion of the guilt of defendant. But it is thoroughly established by judicial decisions of this state that mere suspicion will not suffice. (*People* v. *Kempley*, 205 Cal. 441, 456 [271 Pac. 478], and authorities there cited.)

It may be that defendant is guilty of the crime of which he was charged. That is a question for decision by a jury; but if found guilty, before the judgment may stand, his guilt must be established in accord with legal rules and principles, as set forth in the pertinent statutes as interpreted by the courts.

The judgment, and the order by which the motion for a new trial was denied, are reversed.

York, J., and Doran, J., concurred.