[Civ. No. 12887. First Dist., Div. One. Nov. 19, 1945.]

LUIGI VACCAREZZA et al., Respondents, v. PETER SAN-GUINETTI et al. (Individually and as Copartners), Cross-Complainants and Appellants; ENRICO PAR-DUCCI et al. (Individually and as Copartners), Cross-Defendants and Appellants.

J. A. Pardini and Elda Granelli for Cross-Complainants and Appellants.

Anderlini & Molinari and John B. Molinari for Cross-Defendants and Appellants.

Hilary H. Crawford, H. W. Glensor, J. LeRoy Johnson and Renaldo J. Jeffrey for Respondents.

PETERS, P. J.—The two Sanguinetti defendants, under the name G. B. Celli Company, a copartnership, are retailers of foodstuff, including salami and coppe, in San Francisco. Defendant Parducci, together with five other persons named as defendants, under the name San Francisco Sausage Factory, a copartnership, are wholesalers and manufacturers of sausage, including salami and coppe, in San Francisco. The action was instituted by plaintiffs, husband and wife, to recover damages for injuries to their two minor children and to the wife alleged to have been caused by becoming ill with trichinosis from eating infected salami and coppe sold to them by the G. B. Celli Company and manufactured by the San Francisco Sausage Factory. The trial court found in favor of plaintiffs and entered judgment against both sets of defendants, and, on the cross-complaint of the retailer, entered judgment for them against the manufacturer for any amount the plaintiffs might collect from the retailer. From this judgment both sets of defendants separately appeal, their main contention being that the basic findings are unsupported by any substantial evidence.

The action is not based upon the negligence of defendants but upon breach of the implied warranty of fitness for the purpose for which purchased. (Civ. Code, § 1735.) The section imposes an absolute liability regardless of negligence. (*Gindraux* v. *Maurice Mercantile Co.*, 4 Cal.2d 206 [47 P.2d 708] ; *Jensen* v. *Berris*, 31 Cal.App.2d 537 [88 P.2d 220].) The warranty applies to the sale of foodstuffs for human consumption, and runs with the goods to the ultimate consumer, there being no requirement of privity between the ultimate consumer and the manufacturer. (*Klein* v. *Duchess Sandwich Co., Ltd.*, 14 Cal.2d 272 [93 P.2d 799] ; *Dryden* v. *Continental Baking Co.*, 11 Cal.2d 33 [77 P.2d 833].)

The following facts are admitted or not challenged. The wholesaler manufactures large quantities of salami, a product made from uncooked pork, beef, spices and salt. It labels this product ''Columbo Brand,'' and no other wholesaler

uses that trade name. In October, 1938, the critical time here involved, it also manufactured coppe, a product made from uncooked pork, spices and salt. This product had no trade brand or mark. Both products are intended to be eaten raw. One of its customers is the G. B. Celli Company, the defendant retailer. The G. B. Celli Company purchased from defendant manufacturer forty-five pounds of Columbo Brand salami on October 17, 1938, and the next day purchased four or five pounds of coppe.

It is also admitted that a salesman of defendant retailer, Tirio by name, solicited a grocery order on behalf of his employer from plaintiffs about the middle of October, 1938. Included within the order were four sticks of salami and two sticks of coppe. The plaintiffs specified that they desired first-class merchandise. The salesman, in filling out the order blank, specified that the salami should be ''Columbo Brand,'' and designated the coppe as ''San Francisco coppe.'' It is admitted that the retailer shipped, and plaintiffs received, the grocery order including four sticks of salami and two sticks of coppe sometime toward the end of October, 1938. It is not denied that two and one-half sticks of this salami, and one-half stick of this coppe were consumed by plaintiffs, their children and by two hired men between October 31st and the middle of November. Admittedly, the two children became ill about the middle of November, 1938, and required medical and hospital care. The plaintiff wife became ill towards the end of November and required medical and hospital care.

The trial court found that the salami and coppe eaten by Mrs. Vaccarezza and her two children were purchased from defendant retailer and were manufactured by defendant wholesaler; that that salami and coppe were infected with the larvae of trichinella; that Mrs. Vaccarezza and her two children contracted trichinosis; that the illness resulted from eating the infested salami and coppe purchased from defendant retailer and manufactured by defendant wholesaler. Defendants contend that all of these basic findings are unsupported by any substantial evidence.

Both sets of defendants seem to be laboring under a mistaken idea of the rules of law applicable to this appeal. It was incumbent upon plaintiffs to show by a preponderance of the evidence that the salami and coppe were purchased from defendant retailer and manufactured by defendant

wholesaler; that such products were infested; that as a result of eating such infested meat trichinosis resulted. Generally speaking, the credibility of the witnesses, and the weight to be given their testimony, rests with the trial court. While the trial court is not permitted to base its findings on surmise, conjecture or guess, it has the power to pass on the weight of the evidence. On the question of the sufficiency of the evidence "the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183] ; see, also, *Viner* v. *Untrecht*, 26 Cal.2d 261 [158 P.2d 3] ; *Estate of Bristol*, 23 Cal.2d 221 [143 P.2d 689] ; *Raggio* v. *Mallory*, 10 Cal.2d 723 [76 P.2d 660] ; *Bellon* v. *Silver Gate Theatres, Inc.*, 4 Cal.2d 1 [47 P.2d 462].)

■ This rule is not changed by the fact that some of the findings are based upon circumstantial evidence. ■ Defendants seem to urge that before findings may be properly based on circumstantial evidence it is incumbent upon the plaintiffs to exclude the possibility of every other reasonable inference from the proved facts. That is not the law. Although there is language in *Estate of Wallace*, 64 Cal.App. 107, at p. 113 [220 P. 682], that supports defendants' contention, it should be noted that in denying a hearing in that case the Supreme Court at page 116 expressly withheld approval of that language and cited several cases establishing the correct rule. The true rule is stated as follows in *Katenkamp* v. *Union Realty Co.*, 36 Cal.App.2d 602, at p. 617 [98 P.2d 239], as follows: "It is not necessary, in order to establish a theory by circumstantial evidence, that the facts be such and so related to each other that such theory is the *only* conclusion that can fairly or reasonably be drawn therefrom, because it is now settled law that 'circumstantial evidence in civil cases, in order to be sufficient to sustain the verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than that arrived at by the jury.' (*Chalmers* v. *Hawkins*, 78 Cal.App. 733, 739 [248 P. 727] ; opinion of Supreme Court denying a hearing in *Estate of Wallace*, 64 Cal.App. 107, 116 [220

692

P. 682]; *Tietke* v. *Forrest*, 64 Cal.App. 364 [221 P. 681]; *Mah See* v. *North American Acc. Co.*, 190 Cal. 421 [213 P. 42, 26 A.L.R. 123]; *Ley* v. *Bishopp*, 88 Cal.App. 313 [263 P. 369]; *Barham* v. *Widing*, 210 Cal. 206, 214, 215 [291 P. 173].) In the last-cited case, where the judgment was based upon an inference drawn from circumstantial evidence, although the inference was opposed to the direct testimony of the defendant and another witness, the Supreme Court upheld the judgment, declaring at page 215 of 210 Cal.: 'The jurors were entitled to accept the solution to which these circumstances led them in preference, even, to the positive testimony of the defendant and his nurse to the contrary.' In *Mah See* v. *North American Acc. Co.*, *supra*, the court declared the rule to be that 'even though all the facts are admitted or uncontradicted, nevertheless, if it appears that either one of two inferences may fairly and reasonably be deduced from those facts, there still remains in the case a question of fact to be determined by the jury . . . the verdict of the jury . . . cannot be set aside by this court on the ground that it is not sustained by the evidence.' "

*Reese* v. *Smith*, 9 Cal.2d 324 [70 P.2d 933], and similar cases cited by defendants, do not establish a different rule. Those cases simply hold that inferences may not be predicated upon mere conjecture, a correct rule of evidence, and that inferences based upon facts disproved by common knowledge, are unsupported by the evidence. The plaintiff relying on circumstantial evidence does not have to preclude the possibility of all other possible inferences. He simply has to establish the reasonableness of his inference by a preponderance of the evidence.

 If these rules be applied to the record here presented it is obvious that all material facts found by the trial court find ample support in the record. The first basic finding attacked is the one that the salami and coppe involved were purchased from the defendant retailer and manufactured by the defendant wholesaler. This finding is attacked by the wholesaler who contends that there is no evidence that the salami and coppe in question were manufactured by it. Admittedly the plaintiffs purchased four sticks of salami and two sticks of coppe from the defendant retailer in October, 1938. This was the only pork product purchased by them for several months prior to that time. The order blank admittedly specified ''Columbo Brand salami,'' and ''San Fran-

cisco coppe." Columbo Brand salami was manufactured by defendant wholesaler. Peter Sanguinetti, one of the members of the G. B. Celli Company, testified that in October, 1938, his firm carried in stock only the salami manufactured by defendant wholesaler; that although other brands of salami were purchased for customers, this was only done on specific order; and that his firm always furnished the brand called for by the purchaser's order. While this witness was ill in October, 1938, and not then present at his store, he knew the practices of his firm and was entitled to describe them. John Berberi, the shipping clerk for defendant retailer in October, 1938, and the man who filled and shipped the order to plaintiffs, testified that he recalled filling this order with Columbo Brand salami; that while his firm carried other brands of salami and other firms' coppe they always kept each firm's product in a separate place in the shipping room; that the words "San Francisco coppe" were used by his company's salesmen to designate the coppe of the defendant wholesaler. The plaintiff wife testified that the salami when received by her had the paper marker indicating it was Columbo Brand. From this evidence it is too obvious to require further comment that the finding that the salami and coppe in question were sold to plaintiffs by defendant retailer and manufactured by defendant wholesaler, if not compelled by the evidence, at least finds ample support therein.

The next basic findings attacked are those to the effect that the salami and coppe in question were infested with the larvae of trichinella, that plaintiff wife and her two children contracted trichinosis; and that such disease resulted from eating the salami and coppe in question. These three findings may well be considered together. The evidence is perfectly clear that the usual source of the disease in question is uncooked or improperly cooked pork or bear meat. Other meats and poultry may become infected by coming into contact with infected pork or bear meat, but this is not usual, and moreover, the normal cooking of these other meats or poultry would kill the larvae. Plaintiff wife testified that she and her family ate no other pork, cooked or uncooked, during the months of October and November, 1938, and for some time prior thereto, than the salami and coppe here involved. The family had had no bear meat at all. It is obviously a reasonable, if not inevitable, inference that if plaintiff wife

and her two children were suffering from trichinosis such disease must have been contracted from eating infested salami or coppe purchased from defendant retailer and manufactured by defendant wholesaler. No other inference is reasonably deducible from the record.

A strong attack by all defendants is made upon the finding that plaintiff wife and her two children were actually suffering from trichinosis. The evidence shows that the two boys became ill in November, 1938; that the first country doctor called in diagnosed their condition as influenza, which was then in epidemic stage in the area; that the boys continued ill and the mother called in Dr. John Rosasco, who was then practicing in Stockton. This doctor, prior to this time, had participated in caring for ten to fifteen patients suffering from trichinosis. He had the two boys immediately sent to the hospital. He took blood counts and tests of both boys. He found the white count of both boys materially over 20,000, the normal count being around 11,000, which demonstrated to him that both boys had a virulent infection. The eosinophiles in the blood were of such a percentage, which he gave, as to indicate trichinosis. The blood picture as a whole demonstrated that the boys had some intestinal parasite. In addition, both boys had pain upon the movement of certain muscles; both had the classical symptom of pain upon motion of the eyes; both had fluctuating and high temperatures; both had characteristic puffiness around the eyes; both had edema of both extremities. He diagnosed their illness as trichinosis and testified that he never had any doubt at all that this was what the two boys had. They were in the hospital from November 23rd to November 30th, and were kept in bed for some time thereafter.

Plaintiff wife testified that she became ill while the boys were still in the hospital but did not then complain. She was ordered to bed by Dr. Rosasco the last of November, was sent to the hospital by him on December 6th, and was discharged December 21st. She described her symptoms in detail and they, according to Dr. Rosasco, were the classical symptoms of trichinosis. The doctor diagnosed her case as trichinosis. To check his diagnosis he gave her a skin test by injecting trichinella antigen, which he testified was a recognized laboratory procedure to test for trichinosis. The test reacted definitely and positively in less than a minute, which clearly indicated to him that she had trichinosis. Stool

tests, although they did not show any trichinella, did demonstrate she had no other intestinal parasite. Blood tests indicated the presence of trichinosis. He also performed a biopsy by removing a half grain of muscle tissue from the calf of her leg. A larger amount was not removed because of the discomfort of the patient. No trichinella were found in the tissue, the doctor testifying that the amount of tissue removed was not large enough to make a positive test. However, he testified that laboratory examination of the removed muscular tissue showed that the fibres were swollen, edematous and infiltrated with eosinophiles, and showed cellular infiltrations of a nature which were entirely compatible with the presence of trichinosis. He testified that he knew of no other illness than trichinosis that would have caused all of the symptoms possessed by these three patients, and that no other parasite could have produced the clinical picture possessed by them.

Dr. Alden H. Alexander, a doctor who had treated or observed thirteen cases of trichinosis, described the symptoms of the illness, all of which were possessed by these three parties. In response to a hypothetical question embodying the material facts testified to by Dr. Rosasco he gave it as his opinion that the wife and children had trichinosis. Although he was of the opinion that a skin test might not be too reliable, he placed considerable reliance upon the eosinophile count, testifying that no other parasite gives the same high eosinophile count as does trichinosis.

It is true that various competent doctors and experts were called by defendants, and that they contradicted these two doctors produced by plaintiffs. They testified that combinations of illnesses might produce the same symptoms here present. There was evidence, however, that such combinations might have other symptoms not here present. They disparaged the skin test and the eosinophile count and described other tests that should have been given. They testified that the tests performed and the symptoms possessed did not positively prove the existence of trichinosis.

Defendants also place considerable reliance on the facts that but two and one-half sticks of salami and one-half stick of coppe were consumed and that laboratory tests of the remaining stick and one-half of salami and the remaining coppe failed to show that those portions were infested. This factor is not conclusive. Salami and coppe were manufactured

by the defendant wholesaler in large quantities and parts of many hogs purchased from different sources went into each batch. The larvae in the pork remains dormant. It is perfectly obvious that in any batch of salami or coppe that but one stick, or only a portion of one stick, might be infested while the remainder of the batch might be entirely free from infestation. The fact that the remainder of the salami and the coppe were free of the larvae, while of some evidentiary weight, was not conclusive. It was a factor to be weighed and which was weighed by the trial court.

Great emphasis is also placed upon the fact that plaintiff husband and two hired men also consumed some of the salami and coppe and did not become ill. This is explainable on the theory that the portions consumed by them may not have been infested. The doctors also testified that many people eat infested meat but never develop a disabling illness because the parasites are eliminated before they start to breed in the digestive tract. They pointed out that post mortem examinations indicate that about 17 per cent of the population has consumed infested meat, but that only a very small proportion of that percentage ever develop a disabling illness. One of the doctors was of the opinion that the husband and hired men might not have contracted the disease even if they ate some infested meat because they consumed wine with their meals which aids the digestive processes, thus inducing the elimination of the parasites.

As already indicated, all the witnesses agreed that pork and bear meat are the usual hosts of the parasites. Other meats, or poultry, can be infected by coming into contact with infested pork or bear meat. Poultry and meats other than pork are not eaten raw, however, and cooking normally will kill the parasites. Plaintiff wife testified that she had served no bear meat during all relevant periods, and that the only pork, cooked or uncooked, served at her table during the summer and through November of 1938 was the salami and coppe purchased from defendant retailer. Obviously, it is a reasonable inference, under such circumstances, that the pork purchased from defendant retailer and manufactured by defendant wholesaler was the source of the infection.

Defendant wholesaler testified at length concerning its method of manufacturing salami and coppe, produced health regulations governing the manufacture of these products, produced the health director and his inspectors, and testified

that the regulations were strictly followed. All admit that if the regulations were followed, all trichinella would be killed in the manufacturing process. This evidence is undoubtedly of considerable persuasive force. But as opposed to it are the facts found by the trial court, and supported by substantial evidence, that plaintiff wife and her two children became ill with trichinosis shortly after eating the pork in question; that they had eaten no other pork for a considerable period prior thereto; and that the main source of the infection is diseased pork. It was for the trial court to weigh the evidence. Its findings, being supported by substantial evidence and by reasonable inferences from the evidence, cannot be disturbed. (*Gindraux* v. *Maurice Mercantile Co.*, 4 Cal.2d 206 [47 P.2d 708].)

The defendants argue that the diagnosis of Dr. Rosasco and his testimony supporting the diagnosis, were not evidence of facts but were merely inferences. It is then pointed out that since it can only be inferred that the disease was caused by eating the coppe or salami, the finding that it was so caused is predicated upon an inference based upon an inference. Other chains in the reasoning processes of the trial court are also attacked as being supported only by inferences based on other inferences. These contentions are without merit. An inference is defined as a deduction which the *trier of the fact* makes from the facts proved. (Code Civ. Proc., § 1958.) Expert testimony, may, of course, be used to prove a fact. Dr. Rosasco, as an expert, and as attending physician testified that his patients had trichinosis. The court found as a fact that they did. This finding was, in effect, a finding that Dr. Rosasco's testimony as to that fact was true. It was not an inference that the trial court drew from the symptoms recited. *Reese* v. *Smith*, 9 Cal.2d 324 [70 P.2d 933] did not hold, as defendants apparently contend, that a doctor's testimony as to the nature and cause of a disease is not evidence, but simply that a doctor's testimony based upon a premise which was untrue as a matter of common knowledge, was not substantial evidence. No such situation here exists. In the cases cited by defendants from other states either there was no expert evidence at all or the plaintiff testified to facts which, if true, negatived the possibility that he had trichinosis. These situations do not here exist. It is apparent, therefore, that the reasoning process

used in this particular by the trial court did not involve predicating an inference on an inference.

 It may be true that some of the other facts here found to exist are based on circumstantial evidence and that such facts are used as a basis of proving, by inference, other facts. But the mere fact that a found fact is based upon circumstantial evidence and is used as a partial basis for another found fact does not of itself violate the reasoning processes permitted by our law. (See 1 Wigmore on Evidence, p. 434, § 41; 1 Jones on Evidence, Horwitz ed., p. 39, § 6e.) The statement appearing in some cases that an inference cannot be based upon an inference, usually without citation and certainly without adequate discussion, does not and cannot mean that an inference cannot be based upon a fact which is itself based upon circumstantial evidence. If that were the rule it would mean that few cases based on circumstantial evidence could ever be tried because it is seldom indeed that but one fact, in such a case, is based on circumstantial evidence. If that were the rule the hundreds of decisions in our books affirming judgments where the findings contain a series of facts each proved by circumstantial evidence would necessarily be wrong. Nearly all departments of reasoning are based upon deducing one fact from another fact that has itself been deduced from a prior fact. The only fallacy that may occur in such reasoning is where a deduced fact is based upon circumstantial evidence that is unreliable, is too remote or is too conjectural. The true rule is and should be that an inference cannot be based on an inference that is too remote or conjectural. In a civil case, if the first inference is a reasonably probable one it may be used as a basis for a succeeding inference. This is the only conceivable basis upon which the otherwise apparently conflicting cases can be reconciled.

The expression that an inference cannot be based upon an inference has been used to dispose of evidence which the appellate court considered too conjectural and too weak in probative value in such cases as *Hamilton* v. *Pacific Elec. Ry. Co.*, 12 Cal.2d 598 [86 P.2d 829]; *Tucker* v. *City of San Francisco*, 111 Cal.App. 720 [296 P. 101]; *Robbiano* v. *Bovet*, 218 Cal. 589 [24 P.2d 466]; *Jenkins* v. *National Paint & Varnish Co.*, 17 Cal.App.2d 161 [61 P.2d 780]; *People* v. *Kazatsky*, 18 Cal.App.2d 105 [63 P.2d 299]; see, also, *Stewart* v. *Norsigian*, 64 Cal.App.2d 540 [149 P.2d 46].

The cases where the point has been adequately discussed all recognize that facts from which with other facts another fact is deduced may be proved by circumstantial evidence. In *Paiva* v. *California Door Co.*, 75 Cal.App. 323, 330 [242 P. 887], it is stated: "Respondent contends that the foregoing reasoning is faulty in that 'an inference cannot be based on another inference.' The second inference is not based upon the first inference alone, but upon the inferred fact that the stump was burning and the further fact, proved by direct evidence, that a strong wind was blowing from the stump toward the origin of the fire. The statement that an inference cannot be based upon another inference appears itself to be based upon an unsubstantial foundation. 'An inference is a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect.' (Code Civ. Proc., sec. 1958.) 'An inference must be founded on a fact legally proved.' (Code Civ. Proc., sec. 1960.) Facts established by circumstantial evidence are 'proved' and 'legally proved,' and the foregoing sections do not provide that the facts upon which an inference may be founded must be proved by direct evidence. To hold that an inference cannot be based upon facts inferred from testimonial evidence would be to confine circumstantial evidence within narrow limits. In Wigmore on Evidence, section 41, it it said: 'It was once suggested that an "inference upon an inference" will not be permitted, i.e., that a fact desired to be used circumstantially must itself be established by testimonial evidence; and this suggestion has been repeated by a few courts, and sometimes actually enforced. There is no such rule; nor can be. If there were, hardly a single trial could be adequately prosecuted. . . . In . . . innumerable daily instances we build up inference upon inference, and yet no court ever thought of forbidding it. . . . The judicial utterances that sanction the fallacious and impracticable limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon.' "

The problem is also discussed in *West Coast L. Ins. Co.* v. *Crawford*, 58 Cal.App.2d 771 [138 P.2d 384], where the court, after discussing the circumstantial evidence there involved, and after stating that appellant contended that the chain of reasoning to support the judgment was based on inferences based on inferences, stated (p. 779): "We have

reached the conclusion that there is no such rule in this state save where the second inference does not follow logically from the fact established by the first inference.'' The court discussed the problem as follows (p. 779):

"An interpretation of the rule that would result in its forbidding the use of exhibit 7 in a chain of reasoning, would make it conflict with the rule of daily experience. Let us suppose a man is found dead, with a cut in his heart an inch wide. At his side is a bloody knife with a blade an inch wide, and a blood stained handle bearing fingerprints. An acquaintance of the slain man is found to have fingerprints matching those on the handle. This acqaintance was reported to have said a week before the incident: 'I have warned him not to cross my path again.' A group of ordinary citizens would conclude, in the absence of any satisfactory explanation, that the man had been deliberately slain by his acquaintance, arriving at this conclusion by adding inference to inference to inference. Would a group of judges be compelled to resolve that the evidence was legally insufficient to enable them to affirm a conviction of murder in the first degree? Of course not. (See *People* v. *Reed* (1941), 17 Cal. 2d 405 [110 P.2d 394], and *People* v. *Walsh* (1942), 50 Cal. App.2d 164 [122 P.2d 671].) The explanation may be made that the rule does not ban a course of reasoning which adds inference to inference, so long as any inference is not based upon a prior inference. What then of our supposititious case, and of *People* v. *McQuate* (1934), 2 Cal.2d 227 [39 P.2d 408], and *People* v. *Greig* (1939), 14 Cal.2d 548 [95 P.2d 936], where the facts of intent were inferred from facts established by inferences? Section 1832, Code of Civil Procedure, illustrates its definition of indirect evidence with this statement: 'For example: a witness proves an admission of the party to the fact in dispute. This proves a fact, from which the fact in dispute is inferred.' In the McQuate case a fact that was proved by direct evidence was defendant's statement that he had attempted to dig a grave two days before the killing took place. From the defendant's making of this statement it was inferred that he did his work on the grave on Wednesday. From the fact thus legally proved, it was inferred that on Wednesday he had an intent to kill his victim. Still a further inference is involved, (is it not?) that on Friday, when the killing took place, it was deliberate, because the intent of Wednesday still persisted.''

The court (p. 780) then refers to the case of *People* v.

*Graves* (1934), 137 Cal.App. 1 [29 P.2d 807, 813, 30 P.2d 508], where the conviction of the defendant on a charge of bribery was upheld, although the evidence was entirely circumstantial, and quotes from that case as follows: " 'Courts have sometimes used the expression that an inference cannot be based upon an inference and appellant has sought to apply this principle as a reason for rejecting the evidence under consideration. In the first place, the expression itself is far from an accurate one. Just as the language we speak is said to be made up of dead metaphors, so our ordinary statements as to facts are really made up of dead inferences. These inferences are so intimately associated with known or obvious facts that we habitually accept them as facts. Wigmore, at section 41, volume 1, of his treatise on evidence, says flatly, "there is no such rule, nor can be." But using the term as loosely as you please, how does it apply to the situation here? The fact is the large amount of currency was withdrawn from the bank. We know by inference from other facts that on the same day appellant had a large sum of currency in hand. We know from other facts and inferences all of the other circumstances. It is from the reasonable relation of all of these separate relevant facts each to the other that an inference of the greater fact, to wit, the corrupt agreement and its consummation, is drawn.' "

The court then quotes at length from the Paiva case, referred to above, and continues as follows (p. 782): "Hearings in the Graves case and in the Paiva case were denied by the Supreme Court, and in no subsequent case has an expression of doubt about the soundness of the conclusion there reached been voiced. We do have, however, some cases in this state where the rule there criticized is apparently used as the yardstick by which a chain of reasoning is measured and found wanting. We do not consider ourselves bound by the reference to the 'rule' in these cases, however, because in none of them was there a sound chain of reasoning. For example, in the only Supreme Court case which mentions the rule, *Hamilton* v. *Pacific Elec. Ry. Co.* (1939), 12 Cal.2d 598, 601 [86 P.2d 829], it appears in this setting: 'Indeed, considering the fact that at 8:30 o'clock p.m., many persons were making use of the waiting room, it is not improbable that during the time that plaintiff was an occupant thereof, several persons either did enter or leave it,—in which event it would have been possible that at any given moment

of such time anyone of them might have caused the oil to be deposited upon the floor of the waiting room. However, in order to arrive at the indicated conclusion it would be necessary that one inference be made to depend upon a precedent inference; and, as has been repeatedly ruled, such a course of reasoning is not permitted in the law.' No case was cited in support of this declaration, but these might have been, where reasoning as tenuous as that just noted was condemned. (*Tucker* v. *City of San Francisco* (1931), 111 Cal.App. 720, 726 [296 P. 101]; *Jenkins* v. *National Paint & Varnish Co.* (1936), 17 Cal.App.2d 161, 169 [61 P.2d 780]; *People* v. *Kazatsky* (1936), 18 Cal.App.2d 105, 110 [63 P.2d 299]. See, also, *Robbiano* v. *Bovet* (1933), 218 Cal. 589, 597, 599 [24 P.2d 466].) We are of the opinion that in this state this quotation from 31 C.J.S. 728 aptly describes the status of the rule we have been discussing: ' . . . it has been broadly asserted in many decisions that inferences cannot be founded on inferences. This rule has been said to be not a rule of general application but a rule of reason governing only when the proved facts and their reasonable implications furnish no basis for agreement or disagreement by persons of average intelligence as to whether the *factum probandum* has been established; but there is in fact no rule of law that forbids the resting of one inference on facts whose determination is the result of other inferences. On the contrary, inferences may be based on facts whose determination is the result of other inferences, so long as the first inference is based on such evidence as to be regarded as a proved fact and the conclusion reached is not too remote.' ''

In the present case each fact found by the trial court, although many of them are based on circumstantial evidence, is a reasonable and probable deduction from the evidence. The deductions or inferences are not too remote or too conjectural. They are not based on guesswork, but on reasonable probabilities. This being so the findings cannot be disturbed by this court under the rules of law discussed in the first part of this opinion.

The judgment appealed from is affirmed.

Ward, J., and Schottky, J. pro tem., concurred.

Appellants' petitions for a hearing by the Supreme Court were denied January 17, 1946.