43 N.J. Super. 334 (1957)
128 A.2d 719
M. DIETZ & SONS, INC., A CORPORATION, PLAINTIFF-RESPONDENT,
v.
JAMES A. MILLER, DEFENDANT AND CROSS-CLAIMANT-RESPONDENT, AND FORD MOTOR COMPANY, A DELAWARE CORPORATION, DEFENDANT, AND FARR LINCOLN MERCURY, INC., A CORPORATION, DEFENDANT, AND APPELLANT ON PLAINTIFF'S CLAIM AND ON CROSS-CLAIM. MILTON LABA, PLAINTIFF-RESPONDENT,
v.
JAMES A. MILLER, DEFENDANT-RESPONDENT, AND FORD MOTOR COMPANY, A DELAWARE CORPORATION, DEFENDANT, AND FARR LINCOLN MERCURY, INC., A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 5, 1956.
Decided January 14, 1957.
*335 Before Judges GOLDMANN FREUND and CONFORD.
Mr. Paul B. Thompson argued the cause for the defendant-appellant, Farr Lincoln Mercury, Inc. (Messrs. Emory, Langan, Lamb & Blake, attorneys).
Mr. Hymen B. Mintz argued the cause for plaintiffs-respondents, M. Dietz & Sons, Inc. and Milton Laba, and *336 defendant-respondent, James A. Miller (Messrs. Kristeller & Zucker, Mr. Sol Herships, and Mr. Elias I. Cohen, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
On July 1, 1954 a car operated by plaintiff Laba was stopped for a red light on Belmont Avenue in Newark, with a truck of the plaintiff M. Dietz & Sons, Inc. standing behind it. A new 1954 Mercury automobile owned and operated by the defendant Miller ran into the rear of the Dietz truck, which, in turn, was rammed into the Laba car. These actions were brought in the Essex County District Court against Miller, Ford Motor Company and Farr Lincoln Mercury Inc. ("Farr" hereinafter), seller of the Mercury to Miller, to recover for the property damage to plaintiffs' vehicles. Miller was sued for negligence in operation, Ford for negligence in manufacture of the car and Farr for negligence in installation of the power brakes and power brake unit in the car. Miller answered in the Dietz action, denying negligence, and cross-claimed against Ford and Farr, charging breach of warranties of fitness of the vehicle in the sale to him in that the accident was caused by the total failure of the brakes and brake system of the car.
The trial court, sitting without a jury, tried the actions together and held for Miller and Ford in the main actions and in favor of the plaintiffs and Miller against Farr. Farr appeals.
Miller testified that he took delivery of the car from Farr June 26, 1954 and that he had driven it only 50 miles when the accident happened; that he applied his foot brakes as he drew up behind the Dietz vehicle, and, when they failed to work, drove into it because there was traffic on both sides of him and he had no time to use the hand brake. He drove home, using the hand brake. The next morning, Friday, July 2, 1954, he telephoned Farr and they sent a towcar which brought the car to their service garage. Miller went along and explained to the head mechanic what had happened and the latter told him to come for the car *337 the next day. The next day, Saturday, when he came for the car, he was told that the brake power unit would have to be replaced and that the repairs were not yet completed. He verified the fact for himself by trying the brakes. He was told to return on Monday. He did so and was then given the car, the repairs apparently completed. There was no trouble with the brakes after that.
Farr produced as a witness a Mr. Cronk, one of its mechanics. Miller had testified he was not the person he spoke to at the garage when the car was brought in after the accident. Cronk testified that it was he who had originally installed the power brakes in the car before its delivery on sale to Miller, having taken them off another new car. He said he then "road-tested" the car and the brakes "worked fine." Cronk was not a factory-trained mechanic but was familiar with the installation of power brakes from "practical experience."
Cronk testified that several days after the delivery of the car Miller was back with it and that the assistant service manager called him over and asked him to check the brakes; that he at once tried the brakes on the floor and they worked; and that he added some brake fluid and reported to the assistant service manager he could find nothing wrong. That was the last he had to do with the car. No other person in the employ of Farr in July 1954 was called to testify. Farr's only other witness was one Booker, service manager at the time of the trial but not with Farr when the incidents referred to took place. He produced the service records concerning this vehicle to establish there was never a requisition for a new power brake unit for the Miller car. He did not have the master card for the account, on which an entry of that nature would appear, but he testified the card showed no such entry.
The trial court found that there was negligence on the part of Farr in the installation of the brakes and that the ensuing failure of the brakes was the sole cause of the accident. On this appeal the contention is (1) that there was neither proof of actual negligence by Farr nor any *338 basis for an inference of negligence; and (2) there is no evidence that reasonable care in inspection would have disclosed a defect.
Farr's argument under its first point is premised on the assumption that the ruling of the trial court was founded upon the principle of res ipsa loquitur. But this is not warranted. A reading of the remarks of the trial court attending its ruling clearly shows it was drawing an inference of negligence in the installation of the power brake system from the surrounding factual circumstances and from the failure of the defendant to offer a credible explanation of Miller's account of defendants' actions after the car was brought in for repair of the brakes. Even where the rule of res ipsa loquitur does not apply, the plaintiff may nevertheless show "defendant's negligence by circumstantial or direct evidence of specific acts from which liability may be inferred." Menth v. Breeze Corporation, Inc., 4 N.J. 428, 438 (1950).
In the present case the trial court could have been justified in finding that the failure in the brakes was due to negligence in installation of the brakes, as it apparently did, rather than to an inherent defect in the unit, in view of the proofs that the unit was not replaced after the accident and that the brakes worked satisfactorily after the car was returned to Miller. There can hardly be any question concerning the duty of an automobile dealer to exercise due care in installing power brakes in a new car being sold to a customer, not only in the installation work itself, cf. Zierer v. Daniels, 40 N.J. Super. 130 (App. Div. 1956), but in inspecting the unit to be installed for such defects as a reasonably careful inspection made under such circumstances would disclose. Heckel v. Ford Motor Co., 101 N.J.L. 385, 388 (E. & A. 1925); see O'Donnell v. Asplundh Tree Expert Co., 13 N.J. 319, 338, 339 (1953).
The real issue here is the efficacy of the circumstantial proof to create a fact issue as to defendant's negligence either in installation or in inspection of the unit upon installation. There can be no doubt as to the sufficiency of the evidence *339 to justify the finding that there was a power brake failure on July 1, 1953. Defendant's effort to prove the contrary through Cronk is ineffectual. Its failure to produce the other personnel at the garage to explain why Miller was not permitted to take his car out until the Monday after bringing it in seriously impaired the credibility of Cronk's testimony. Cf. Ferdinand v. Agricultural Insurance Co. of Watertown, N.Y., 22 N.J. 482 (1956). The trial court was justified in discounting it in toto. If, then, the brakes failed on July 1, 1954, after only a few days and 50 miles of use, the fact-finder was free to infer negligence either in inspection or in installation, there being no satisfactory explanation by the defendant. Heckel v. Ford Motor Co., supra (101 N.J.L., at page 388); and see Martin v. The Studebaker Corp., 102 N.J.L. 612, 614 (E. & A. 1926). The only explanation by defendant was Cronk's statement that he road-tested the car after he installed the brakes. The extent of the test was not indicated, nor was there any testimony concerning accepted standards in testing power brakes or for testing the effectiveness of their installation. There was no proof that the unit was inspected at all before being installed in the Miller car. We conclude the trial court's finding was not without support in the evidence, bearing in mind the difficulty in respect to proof which confronts a purchaser or other plaintiff in such a situation. Prosser, Law of Torts (2d ed. 1955), § 84, p. 505. Okker v. Chrome Furniture Mfg. Corp., 26 N.J. Super. 295, 299 (App. Div. 1953); Swensson v. N.Y. Albany Despatch Co., 309 N.Y. 497, 131 N.E.2d 902 (Ct. App. 1956); Hewitt v. General Tire and Rubber Co., 3 Utah 2d 354, 284 P.2d 471 (Sup. Ct. 1955); Northern v. General Motors Corp., 2 Utah 2d 9, 268 P.2d 981 (Sup. Ct. 1954).
Of course, liability here extends to those who it may reasonably be foreseen may be in the vicinity of the chattel's probable use, as well as to the purchaser. Shaw v. Calgon Inc., 35 N.J. Super. 319, 330 (App. Div. 1955), and the full collation of authorities there assembled.
Judgments affirmed.