**Le Wyatt DAVIS and Rogue Transportation, Inc., an Oregon corporation, Plaintiffs,**

**FIRESTONE TIRE & RUBBER COMPANY, an Ohio corporation, Doe One, Doe Two and Doe Three, Defendants.**

**Civ. No. 8074.**

United States District Court
N. D. California, N. D.
Aug. 28, 1961

Wilkins, Little & Mix, Sacramento,. Cal., for plaintiffs.

Devlin, Diepenbrock & Wulff, Sacramento, Cal., and Koerner, Young, McColloch & Dezendorf, Portland, Or., for defendants.

JAMESON, District Judge.

The plaintiffs, citizens of Oregon, seek damages from the defendant, a citizen of Ohio, for personal injuries sustained by Davis and property damage sustained by Rogue Transportation, Inc. in a collision between a tractor-trailer owned by Rogue Transportation and being driven by Davis, its employee, and another vehicle, hereinafter referred to as the Lasme vehicle, on April 17, 1959, approximately seven miles north of Williams, California. Plaintiffs claim that the proximate cause of the collision was the failure of the right front tire of the Rogue truck, alleging negligence in the manufacture of the tire and breach of an express warranty and an implied warranty of fitness.

The case was tried to a jury. At the close of plaintiffs' case and again after all parties rested, defendant moved for a directed verdict, which was denied. The jury failed to return a verdict and was discharged. Defendant has moved the court for judgment in accordance with its motion for a directed verdict.[1]

In determining whether the defendant is entitled to a directed verdict, the court must view the evidence in the light most favorable to the plaintiffs, giving the plaintiffs the benefit of all inferences that could reasonably be drawn in their favor.[2] The plaintiffs

---

1. Pursuant to Rule 50(b), F.R.Civ.P., 28 U.S.C.A.

2. Barron & Holtzoff, Vol. 2, § 1075, p. 761; Moore's Federal Practice, 2d ed., Vol. 5, § 50.02. p. 2316; National Molasses Co.

v. Herring Sales, 8 Cir., 1955, 221 F.2d 256, 259; Commercial Standard Ins. Co. v. Feaster Trucking Service, 10 Cir., 1958, 259 F.2d 210.

have the burden of proving causation. Plaintiffs may properly rely on circumstantial evidence, and the jury is entitled to draw reasonable inferences therefrom;[3] but the proof, whether direct or circumstantial, must be sufficient to raise a reasonable inference that the negligence or breach of warranty of the defendant was the proximate cause of plaintiffs' damages.[4] Fact finding and inference drawing must be in the realm of probability and not possibility.[5] A mere "possibility" of causation is not sufficient, and where the cause remains one of speculation or conjecture, it is the duty of the court to direct a verdict.[6] Where the evidence leaves the cause of of the accident uncertain or unknown, the jury should not be permitted to guess as between possibilities.[7]

Is there any substantial evidence from which a jury might find that any negligence of the defendant in the manufacture of the tire or its breach of warranty was the proximate cause of the collision between the two vehicles?

Many of the pertinent facts are undisputed. The right front tire of the Rogue vehicle, manufactured by the defendant, was purchased on March 17, 1958, and thereafter was in the possession of Rogue until the accident occurred on April 17, 1959. It had been driven approximately 13,715 miles on a heavy duty vehicle. Davis inspected the tires about 35 miles before the collision and observed nothing wrong with any of them.

Davis was driving the Rogue vehicle in a southerly direction at a speed of approximately 45 to 50 miles an hour. The Lasme vehicle was travelling north at approximately the same speed. The Rogue vehicle turned across the center line and collided with the left side of the Lasme vehicle toward the rear. The point of collision was six feet five inches east of the center line of the highway. There were no skid marks of either vehicle prior to the point of impact.

Immediately prior to the impact the Rogue vehicle traversed a right hand turn in the highway. The accident occurred about 5:30 A.M., and each driver had an unobstructed view of the other vehicle for at least half a mile.

Following the impact, the Rogue vehicle continued in a southeasterly direction approximately 275 feet and came to rest on the east side of the highway on the Southern Pacific roadbed. Either at the point of impact or shortly thereafter the front axle and springs of the

3. Spolter et al. v. Four-Wheel Brake Service Co. et al., 1950, 99 Cal.App.2d 690, 222 P.2d 307.

4. Rexall Drug Co. v. Nihill, 9 Cir., 1960, 276 F.2d 637; Spencer v. Beatty Safway Scaffold Co., 1956, 141 Cal.App.2d 875, 297 P.2d 746; McKellar v. Pendergast et al., 1945, 68 Cal.App.2d 485, 156 P.2d 950; Medina v. All American Bus Lines, Inc., 5 Cir., 1945, 152 F.2d 61.

5. Rexall Drug Co. v. Nihill, 9 Cir., 1960, 276 F.2d 637; Independent-Eastern Torpedo Co. v. Ackerman Well Service, 10 Cir., 1954, 214 F.2d 775, 777.

6. The general rule here applicable was well stated in Prosser on Torts, 2d ed., p. 223, as follows:

"On the issue of the fact of causation, as on other issues essential to his case, the plaintiff has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. Where the conclusion is not one within the common knowledge of laymen, expert testimony may provide a sufficient basis for it, but in the absence of such testimony it may not be drawn.

"The plaintiff is not, however, required to prove his case beyond a reasonable doubt. He need not negative entirely the possibility that the defendant's conduct was not a cause, and it is enough that he introduces evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not. * * *"

7. Snow v. Harris, 1919, 41 Cal.App. 34, 181 P. 676; Puckhaber et ux. v. Southern Pac. Co., 1901, 132 Cal. 363, 64 P. 480.

Rogue tractor became separated from the frame. The right front wheel came to rest opposite the Rogue vehicle on the west side of the highway, and the tread of the tire was on the highway 10 to 15 feet away.[8] Following the impact, the left front tire had a deep gash 14 inches in length and was deflated. The right front tire, minus the tread, was completely inflated.

Photographs received in evidence show skid marks of the right front tire after the impact. There is no evidence that any of the tread was separated from the tire prior to the impact. Davis testified that just as he started the turn to the right the truck pulled to the left, or made him feel that it was pulling to the left, "because it started pulling across the line"; that the Lasme vehicle was about half a mile away when he first saw it and 150 feet to 200 feet away when he found he was having difficulty turning his vehicle to the right; that the pulling of the truck gave him "the same feeling as that a tire would be going down; a left tire would be softening";[9] that he did not know whether the left tire was softening before the collision. He did not hear any noise made by any portion of the vehicle before the collision. He had driven a vehicle when the tread of a tire left and testified that, "If it strips completely, you can hear it." He did not hear anything unusual about the tread of the tires before the collision. After the initial impact he "was in a daze or stupor", and he had "no knowledge of trying to control (the tractor), whether I did or didn't". Davis did not know what caused the accident.[10]

If plaintiffs have made a case of negligence or breach of warranty *proximately* *causing* the injuries complained of, it is through the testimony of two expert witnesses, George W. Archibald and Bliss Harper. Archibald has had considerable experience in adjusting defective tires, and recapping, repairing and selling tires. He testified that it was apparent from his examination of the tire that partial separation of the tread from the carcass had been taking place for some time prior to the collision, and that the process of separation "could have taken place for several thousand miles". In his opinion, total separation had been caused by continuing partial separation, which in turn resulted from an improper bond between tread and carcass, a defective tire in manufacture or material. He did not find any breaks in the tire. Separation, in his opinion, could not have been caused by a blow or impact. He testified further that the process of tread separation causes a tire to become very hot. In examining the truck he found particles of rubber embedded in the metal bumper almost directly in front of the right front wheel, rubber "in a hot condition at the time it embedded itself on the metal".

Archibald testified in a deposition prior to trial that the "tread did not leave the actual carcass of the tire before" the impact. At the trial he expressed the opinion that the tread left the carcass "simultaneously with the accident". Partial separation (not stripping) had been occurring "considerably before the entire tread threw itself". Archibald admitted that he had testified in his deposition that if total separation "had occurred before the accident the driver would have been very much aware of what was happening". As set forth above, it was Archibald's opinion that

---

8. The driver of the Lasme vehicle testified that this wheel was on the west side of the highway and that he moved it off the highway to the east side where it was later found by the witness Able.

9. This is a reasonable impression since the vehicle was pulling to the left and not to the right. There is no claim that the left

front tire was defective or the cause of the collision.

10. On cross-examination Davis admitted that he had testified in his deposition:
"Q. And so far as you are concerned, from your recollection of the accident, you don't attribute it on any tire failure?
"A. We will say this, I don't know; I have no truthful knowledge of what caused the accident."

hot rubber had come into contact with the bumper, but there is no evidence as to whether this occurred prior to or after the initial impact.

Harper is in the business of repairing heavy duty trucks, and particularly wrecked vehicles. As a part of his work, he "analyzes wreckage" to determine "causation for the wrecks". The Rogue vehicle was brought to his shop after the collision. Harper corroborated Archibald with regard to the rubber markings and residue on the right front bumper. The steering mechanism was badly damaged, but in Harper's opinion there was nothing wrong with the mechanism other than the damage resulting from the wreck. The left front bumper was bent to the rear from 10 to 14 inches. It was Harper's opinion that the "tread left the (right front) tire and caused the markings on this bumper by beating down, as this tread is approximately 12 feet long and it probably left in sections". It was his opinion that "part of this tread, or portions of it, lodged between the wheel and the bumper, which is a very small area * * * approximately about four or four and one-half inches, and locked this tire so that it skidded after the tread had left, which is evidenced by the markings on the tire".

The axle, wheels and springs were separated from the frame when the vehicle was brought to Harper's shop. He had no way of knowing whether the separation occurred in the initial impact or later. According to Harper, it would have been impossible to have steered the Rogue vehicle effectively after the impact, as the driver would have no control over the vehicle.[11]

Thus it appears from testimony of plaintiffs' own expert witness that any separation of the tread from the tire *after the impact* could not be the cause of the accident. Is there any substan-

tial evidence to show that the tread was separated from the tire, in whole or in part, *prior to the impact* in such a manner as to interfere with the steering of the Rogue vehicle, and if so, that this was the proximate cause of the collision?

Archibald's opinion that the tread was in the process of separation for a considerable period of time, but that the separation was not complete through stripping of the tread from the tire until the time of the impact or thereafter, sheds no light upon whether there was sufficient separation to interfere with the steering before the impact. Nor does Harper's opinion that some of the tread lodged between the wheel and the bumper and locked the tire so that it skidded after the tread had left the tire. To the contrary, both opinions leave the question entirely in the realm of speculation and conjecture. And, as noted above, there is no evidence of any skidding, as the result of a locked wheel or otherwise, prior to the point of impact.

Nor are plaintiffs aided by the testimony of plaintiff Davis that the pulling of the truck to the left gave the same feeling as a tire going down, "a left tire would be softening", and that when a tread strips from the tire completely it can be heard, but that he heard nothing unusual prior to the collision. Moreover, the evidence is undisputed, supported by photographs, that the tire on the right front wheel first skidded after the impact; and it is admitted that the left front tire was deflated and the right front tire inflated after the collision.

█ Plaintiffs' theory at best is one of several possible causes of the collision and in some respects against the physical evidence. There is no substantial evidence that the tread or any portion thereof left the tire and fouled the steering mechanism prior to the initial impact with the other vehicle. It would be a

---

11. On cross-examination Harper testified in part:

"Q. So that from the (time) of the initial impact on, there was no control over the vehicle? A. Not by the driver, no, sir. Tr. 37.

"Q. * * * I assume that whatever happened to the right wheel or tire of the vehicle after the initial impact would have had nothing to do with the control of the vehicle? A. Not after the initial impact, no, sir." Tr. 41.

mere choice of possibilities, based upon surmise and conjecture, to permit a jury to so infer. To permit a jury to choose this possibility and then permit a further inference to be based upon it, i. e., that such "possibility" was the proximate cause of the accident, would go beyond the bounds of probability and reasonable inference. Even assuming that the testimony of Archibald was sufficient to raise a jury issue as to whether defendant was negligent in the manufacture of the tire, the plaintiffs have failed to sustain their burden of showing by any substantial evidence that any negligence or breach of warranty of the defendant was the proximate cause of the collision.[12]

This conclusion finds support in the recent case of Rexall Drug Co. v. Nihill, 9 Cir., 1960, 276 F.2d 637, 639. In that case, the jury found for the plaintiff in a suit for negligent manufacture and breach of express warranty of a home permanent product. Plaintiff claimed to have lost her hair as a result of using the product. She introduced several medical witnesses whose testimony may be summarized as follows: One said that the loss of hair could well have been due to the home permanent but he did not feel it could be proved one way or the other. Another felt that the loss of hair "may well have been due to a chemical irritant such as you mentioned was in the home permanent". A skin specialist testified that the chemical in the home permanent could be harmful; and that he had not ascertained a physical reason for the loss of hair. Still another doctor said that a cold wave chemical could have caused the original hair loss. Judge Jertberg, speaking for the court, said:

"(T)he implied finding of causation by the jury must rest almost completely, if not exclusively, on the opinions expressed by the medical witnesses. * * * The opinions

expressed by appellee's medical witnesses were in the realm of possibility and not probability. * * * (The medical testimony) is not sufficient to establish that the home permanent was the proximate cause of appellee's condition.

"The law is well settled both in California and North Dakota that proof must be sufficient to raise a reasonable inference that the act complained of is the proximate cause of the injury. The verdict of the jury cannot rest on guess or speculation." 276 F.2d at pages 643, 644.

The verdict was set aside and judgment was entered for the defendants. Plaintiffs attempt to distinguish the Rexall case, contending that there was a failure of expert testimony on a matter not within the experience of the ordinary man, but that in the case at bar there are facts from which an ordinary man can draw an inference. The contention is without merit for two reasons: First, without the testimony of Archibald and Harper, ordinary men could not even hazard a guess as to the meaning of marks, abrasions, etc. upon the tire and the bumper. If a jury were to find tire failure as the proximate cause of this accident it would have to base such finding upon their expert testimony. Second, and more important, it is clear from the Rexall case that a jury cannot be allowed to choose between possibilities. The expert testimony in Rexall indicated only that loss of hair could *possibly* result from the permanent wave product. In the instant case the most that can be said for plaintiffs' evidence, expert and otherwise, is that plaintiffs' theory is a *possibility*. The two cases are not distinguishable.

The cases upon which plaintiffs rely in my opinion are distinguishable factually

12. The defendant offered substantial and persuasive evidence to negative the charge of negligence in the manufacture of the tire and also to show the cause of the collision. The court may not, however, substitute its judgment for any reasonable inference which a jury might draw from the facts in evidence. Accordingly, this opinion has referred solely to the evidence on behalf of the plaintiffs on both the questions of negligence and proximate cause.

and in no wise contrary to the principles of law set forth above.

Henningsen v. Bloomfield Motors, Inc., 1960, 32 N.J. 358, 161 A.2d 69, 75, 75 A.L.R.2d 1, was a case in which 10 days after the purchase of a new automobile, and before any service had been given the car by outsiders, it went out of control for no apparent reason, turning sharply to the right and into a brick wall. The manufacturer was sued for breach of warranty. There was opinion evidence of an expert that the unusual action of the car must have been due to a *mechanical defect or failure* of something from the steering down to the front wheels, that "something down there had to drop off or break loose". This testimony, coupled with the testimony of the driver as to the action of the steering, established the fact that a defect was present and that it occurred before the accident. The jury could reasonably infer that the defect was the proximate cause of the accident. The facts ruled out any other probability, if indeed every other possibility was not precluded. In Knapp v. Willys-Ardmore, Inc., 1953, 174 Pa.Super. 90, 100 A.2d 105, expert testimony indicated that a tie rod had broken before plaintiff's car suddenly turned to the right out of control. This was corroborated by an eyewitness who saw the right front tire turn sharply to the right, while the left tire remained pointed straight ahead. Again the jury had ample evidence of defect and causation. In M. Dietz & Sons, Inc. v. Miller, App. Div.1957, 43 N.J.Super. 334, 128 A.2d 719, plaintiff drove a new car only 50 miles when the brakes failed, causing him to crash into the rear of another car. The cause of the accident, brake failure, was known, and the small length of time that plaintiff had the car negatived any possibility other than a mechancial defect.

In Spolter et al. v. Four-Wheel Brake Service Co. et al., 1950, 99 Cal.App.2d 690, 222 P.2d 307, 309, plaintiffs were injured when a rear wheel came off their car eight days after defendant had replaced it. It was undisputed that the wheel's coming off was the proximate cause of the accident. Experts testified that improperly tightened lug bolts "could cause the wheel * * * to come off" and that the *"only* cause could be improperly tightened lug bolts". The jury was allowed to infer negligence upon the part of the defendant "since reasonable probability is all that the law requires * * *." 222 P.2d at page 311.

Vaccarezza et al. v. Sanguinetti et al., 1945, 71 Cal.App.2d 687, 163 P.2d 470, was an action for breach of warranty, the complaint alleging that plaintiff's family had contacted trichinosis as a result of eating infested salami and coppe. The evidence was very strong, although partly circumstantial, that defendants' products were the ones purchased by plaintiffs; that the wife and children did have trichinosis; that defendants' salami and coppe were the only pork products that were eaten by them for months surrounding the occurrence; that the family had no bear meat; that the larvae is found only in raw or improperly cooked pork or bear meat; that any larvae that would get into other meat by contact with infested meat would be killed by normal cooking; and that salami and coppe were raw pork products. The jury was allowed to infer that defendants' product was infested and the cause of the illness complained of. This was no mere choice of possibilities by the jury. To the contrary, in the language of the court, "no other inference is reasonably deducible from the record". 163 P.2d at page 474.

In all of the foregoing cases the evidence was sufficient to raise a reasonable inference that the act complained of was the proximate cause of the injury. The opinions of the expert witnesses were all in the realm of probability. The question of causation was not, as here, in the realm of possibility, speculation and conjecture.

It is my conclusion that the evidence was insufficient to raise a reasonable

inference that the negligence or breach of warranty of the defendant was the proximate cause of plaintiffs' damages. Defendant's motion accordingly is granted.