59 F.3d 175
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 FLIGHT INTERNATIONAL, INC., Plaintiff-Appellee,
v.
ALLIED SIGNAL, INC., Allied Signal, Inc., a Delaware
corporation, Defendant-Appellant.
 No. 94-55289.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 8, 1995.
Decided June 20, 1995.
 
 Before: FLETCHER, WIGGINS, FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Allied-Signal, Inc. appeals the trial court's denial of its motions under Rules 50 and 59 on the issue of causation and its Rule 59 motion on the issue of plaintiff's negligence. In this appeal, we consider (1) whether expert testimony was necessary to prove causation in a product liability action where an admittedly defective jet engine failed during takeoff and the plane crashed shortly thereafter, and (2) whether the trial court abused its discretion in refusing to grant the defendant a new trial on the issue of plaintiff's negligence.
 
 
 3
 The district court had diversity jurisdiction pursuant to 28 U.S.C. Sec. 1332, and we have jurisdiction over the appeal pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 BACKGROUND
 
 4
 This action arises out of the crash of a twin-engine Model 35 Learjet after its right engine failed during takeoff on April 2, 1990. The plane was occupied only by its pilots, both employees of Flight International, Captain James and First Officer Eisenbrey, both of whom survived the crash without injury. The plane itself was destroyed. The owner of the plane, Flight International, brought suit for the loss of the aircraft against Allied-Signal, which manufactured the right engine.
 
 
 5
 Before trial, Allied-Signal stipulated that the failure of the engine immediately before the crash was caused by a product defect for which Allied-Signal was responsible. Allied-Signal did not, however, concede that the defect was the cause of the crash. The action was tried to a jury on a product liability theory in the United States District Court for the Southern District of California.
 
 
 6
 At trial, the main issues in dispute were causation and the pilots' negligence.[1] Flight International presented evidence that, when the right engine failed during takeoff, the plane veered sharply to the right and presented the pilots with an emergency situation. The pilots applied full opposite rudder, but this proved insufficient to counteract the veer. The pilots elected to continue the takeoff, but the plane was not fully in control, and after takeoff the plane crashed back to earth. Flight International also presented evidence that the pilots were highly competent and had behaved prudently under the circumstances. Allied-Signal, in turn, presented evidence that, after the engine failure, a crash was not inevitable. Allied-Signal argued that the pilots could and should have controlled the plane and that the pilots' inexpert handling of the plane, rather than the failure of the engine, caused the crash.
 
 
 7
 At the close of all the evidence, Allied-Signal moved for judgment as a matter of law under Fed. R. Civ. P. 50, arguing that Flight International had failed to prove causation because Flight International had presented no expert testimony on that issue. The trial court denied Allied-Signal's motion, finding there was ample evidence that the failure of the engine had been a substantial factor in the crash. The case was submitted to the jury, which found that the failure of the right engine during takeoff was a legal cause of the damage to the aircraft, that Flight International and its pilots had not been negligent, that the defective engine caused 100% of Flight International's damages, and that Flight International was entitled to $1,456,193.79 in compensatory damages.[2]
 
 
 8
 After trial, Allied-Signal renewed its Rule 50 motion on the grounds that Flight International had produced absolutely no expert evidence on causation linking the engine defect in the aircraft to the cause of the crash. Allied-Signal also moved for a new trial under Rule 59 on the ground that the jury's findings of causation and of no negligence on the part of Flight International were clearly against the weight of the evidence. Allied-Signal's post-trial motions were denied. Allied-Signal timely appealed. We affirm.
 
 DISCUSSION
 I. STANDARD OF REVIEW
 
 9
 Allied-Signal's motion for judgment as a matter of law under Rule 50 should have been granted "if the evidence, construed in the light most favorable to [Flight International], permits only one reasonable conclusion, and that conclusion is contrary to the jury's." Vollrath Co. v. Sammi Corp., 9 F.3d 1455, 1460 (9th Cir. 1993), cert. denied, U.S. , 113 S. Ct. 2163 (1994). If, on the other hand, there was substantial evidence presented at trial to support the verdict, judgment as a matter of law was properly denied. See Landes Constr. Co. v. Royal Bank of Canada, 833 F.2d 1365, 1371 (9th Cir. 1987). This court reviews the denial of a Rule 50 motion de novo. See Vollrath, 9 F.3d at 1460.
 
 
 10
 We review the denial of a new trial under Rule 59 for abuse of discretion. Landes Constr. Co., 833 F.2d at 1372. Although the district court may weigh the evidence and assess the credibility of witnesses, this court's review is narrower. Once the district court determines that the verdict was not against the clear weight of the evidence, this court generally will reverse only "if the record contains no evidence in support of the verdict." Id. at 1371-72.
 
 
 11
 All substantive issues are governed by the law of California. Erie v. Tompkins, 304 U.S. 64, 78 (1938).
 
 
 12
 II. FLIGHT INTERNATIONAL DID NOT FAIL TO PROVE CAUSATION
 
 
 13
 A. The Engine Failure Was A Substantial Factor In The Crash
 
 
 14
 As the plaintiff, Flight International had the burden of proving that the defective engine was a legal cause of the crash. See Doupnik v. General Motors Corp., 275 Cal. Rptr. 715, 721 (Cal. Ct. App. 1990). Allied-Signal claims that causation in this case could have been proved only by expert testimony, that Flight International failed to introduce expert testimony on that issue, and that Allied-Signal is therefore entitled to judgment as a matter of law. Specifically, Allied-Signal argues that any finding of causation in this case would be pure speculation unless based on an expert "evaluation of the aerodynamic response and handling of a twin-engine jet aircraft immediately after an engine failure during a takeoff -- a situation far beyond the experience of lay persons on the jury." Appellant's Br. at 1.
 
 
 15
 Causation in product liability cases has two facets. Osborn v. Irwin Memorial Blood Bank, 7 Cal. Rptr. 2d 101, 107 (Cal. Ct. App. 1992). First, the plaintiff must show that the defect in the product was a "cause in fact" of the injury. The second facet is "whether as a matter of social policy the defendant should be held legally responsible for the injury." Id. We see no social policy reason why the manufacturer of an airplane engine should not be held legally responsible for a crash in which the failure of the engine is a cause in fact, where there was neither negligence on the part of the plaintiff (see Part III, below), nor a superseding cause.[3] Only cause in fact, therefore, is at issue in this appeal. To determine whether the product defect is a cause in fact of an injury, we inquire whether the defect was a "substantial factor in bringing about the harm.... If, as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact followed, the conclusion may be justified that the causal relation exists." Osborne, 7 Cal. Rptr. 2d at 108.
 
 
 16
 Under that test, it is clear that the engine failure was a "substantial factor" in the crash. The jury heard the eyewitness testimony of both Captain James and First Officer Eisenbrey that the failure of the engine on one side caused the aircraft to swerve and begin to leave the runway. Allied-Signal's own expert witness, Carl Henry Snow, whom the parties stipulated to be an expert on pilot handling of aircraft, testified that if the pilots had done nothing in response to the engine failure, the plane would have gone off the runway at approximately 140 miles per hour. In light of the eyewitness and expert testimony presented at trial, the jury did not have to speculate to infer that the sudden loss of power in only one engine of a twin-engine plane would cause the plane to veer sharply to that side, and that the veering would tend to cause the plane to leave the runway and crash. Defense counsel conceded nearly as much, when pressed by the trial court.
 
 
 17
 Because (1) engine failure would tend to cause a crash, (2) the plane actually crashed, and (3) there has been no contention that the chain of events set in motion by the engine failure was ever interrupted before the crash,[4] the jury could permissibly conclude that the engine failure was a substantial factor in the crash. No further testimony, lay or expert, was necessary.[5]
 
 
 18
 B. To Prove Causation, Flight International Did Not Need To Prove That The Plane Became Uncontrollable
 
 
 19
 Whether or not the engine was a substantial factor in the crash, Allied-Signal argues that there was no expert testimony on the "critical link ... that the engine failure caused the aircraft to become uncontrollable." Appellant's Br. at 11 (emphasis omitted). There is, however, no basis for Allied-Signal's assumption that Flight International had to prove the airplane became uncontrollable. To require proof of uncontrollability would misstate the legal standard for causation. For a product defect to be the legal cause of an injury, the resulting injury need not be inevitable or unavoidable: the defect need only be a "substantial contributing factor" in bringing about the injury. Doupnik, 275 Cal. Rptr. at 721.
 
 
 20
 The controllability of the aircraft following the engine failure may be relevant to whether the pilots were comparatively negligent and to whether the actions of the pilots constituted a superseding cause. Comparative negligence and superseding causation are, however, affirmative defenses on which the defendant has the burden of proof; they form no part of the plaintiff's prima facie case.
 
 
 21
 In conclusion, the jury's finding of causation was supported by substantial evidence. We affirm the trial court's denial of Allied-Signal's Rule 50 and 59 motions on the issue of causation.
 
 
 22
 III. ALLIED-SIGNAL IS NOT ENTITLED TO A NEW TRIAL ON PLAINTIFF'S NEGLIGENCE
 
 
 23
 After the jury found that the pilots had not been negligent in failing to prevent the crash, Allied-Signal moved for a new trial under Rule 59 on the ground that the verdict was against the clear weight of the evidence. The trial court denied the motion. This court may reverse the trial court's ruling only if "the record contains no evidence in support of the verdict." Landes Constr. Co., 833 F.2d at 1372. Because there was some evidence to support the jury's finding that the pilots acted with due care in handling the emergency, the trial court's finding that Allied-Signal had not clearly proved the pilots were negligent was not an abuse of discretion, and we must affirm.
 
 
 24
 Allied-Signal argued, at trial and on appeal, that the pilots should have been able to control the aircraft and prevent the crash. Allied-Signal pointed out that the plane was certified by the Federal Aviation Administration to be controllable in circumstances similar to those in this case. Allied-Signal's experts testified about the extensive training that pilots receive to enable them to control a plane under such circumstances. Allied-Signal highlighted certain types of optional training and practice in the Model 35 Learjet that these pilots had not had. Allied-Signal's expert testified that, after considering where the plane was on the runway and the speed it was travelling when the engine failed, he concluded that the pilots could have brought the plane safely to a halt without overrunning the runway, if only they had chosen to abort the takeoff rather than become airborne. Allied-Signal argued that the pilots' failure either to abort the takeoff or successfully to complete it was the result of inadequate training and constituted negligence.
 
 
 25
 The evidence to the contrary was, however, sufficient to support the verdict. The parties agree that the way pilots are trained to handle an engine failure depends on whether the plane has reached a speed known as V1: pilots are trained to abort a takeoff if an engine failure occurs before V1 and to continue the takeoff if the plane is at a speed in excess of V1.[6] This plane was travelling in excess of V1 when the engine failed. The pilots' decision to take off, therefore, would seem to be in accord with the pilots' training. Such was the conclusion of Flight International's pilot expert, Donald McClure, who had previously participated in the investigation of twenty air crashes. McClure testified that, in his opinion, the pilots acted prudently in handling the emergency. According to McClure, the pilots "didn't have any choice but to try and make this airplane fly because ... at this point, he was either going to go off the side of the runway and the airplane was going to crash, or he had one last thing he could try, and that is to fly it, see if it would fly." McClure testified that the flight crew "conducted themselves exactly as they had been trained to do.... They did everything that was humanly possible to control the direction of this airplane and comply with the procedures that they were trained to perform with." Although Allied-Signal argues that the pilots should have been able to control the plane, the jury was entitled to believe McClure's testimony and conclude that the actions of the pilots during the sudden emergency were in accord with the applicable standard of care. Accordingly, we cannot say the trial court abused its discretion in refusing to grant a new trial on the issue of plaintiff's negligence.[7]
 
 
 26
 The judgment of the trial court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 California has adopted a system of "pure" comparative negligence, see Li v. Yellow Cab Co., 13 Cal. 3d 804, 829 (1975), which also applies in strict liability cases, see Daly v. General Motors Corp., 20 Cal. 3d 725 (1978). Negligence by the plaintiff, therefore, may reduce the damage award, but does not act as an absolute bar to recovery
 
 
 [2]
 The judgment was subsequently amended to $1,528,001.96 to include costs and pre-judgment interest
 
 
 [3]
 Allied-Signal has not specifically argued that the pilots' handling of the emergency was a superseding cause. Such an argument would be fruitless. To show that the actions of the pilots broke the chain of causation, Allied-Signal would have had to prove that the pilots' actions were "highly extraordinary," that they were not "a normal response to a situation created by the defendant's conduct," and that the actions were "extraordinarily negligent." Stewart v. Cox, 362 P.2d 345, 349 (Cal. 1961); see also Restatement (Second) of Torts Sec. 443 (1965). In fact, Allied-Signal failed to persuade the jury that the pilots had been negligent at all
 
 
 [4]
 At one point following the engine failure, the pilots temporarily regained directional control of the aircraft by temporarily reducing power in the left engine, which lessened the imbalance in thrust and enabled the pilots to steer the plane down the runaway. The effects of the engine failure were still in active and continuous operation, however, because the emergency was not over: the plane was still hurtling down the runway with only one functioning engine
 
 
 [5]
 None of the cases discussed by Allied-Signal supports its argument that expert testimony was essential to Flight International's case. See Jones v. Ortho Pharmaceutical Corp., 209 Cal. Rptr. 456 (Cal. Ct. App. 1985); Davis v. Firestone Tire & Rubber Co., 196 F. Supp. 407 (N.D. Cal. 1961); Nichols Constr. Corp. v. Cessna Aircraft Co., 808 F.2d 340, 347 (5th Cir. 1985); Hoban v. Grumman Corp., 717 F. Supp. 1129 (E. D. Va. 1989), aff'd, 907 F.2d 1138 (4th Cir. 1990). In all those cases, the plaintiff's failure of proof was on the existence of a product defect rather than on the relation of an admitted defect to the injury. The case at hand would be analogous to those cases only if there had been no evidence that the right engine had actually failed prior to the crash. Then, based on those cases, it would be appropriate for the court to set aside a verdict as based on speculation that the engine was defective, did fail, and caused the crash
 
 
 [6]
 This textbook rule avoids the need for the pilot to figure out, in a split second, what his stopping distance is and how much runway he has left
 
 
 [7]
 Allied-Signal claims that the district court's exercise of discretion was marred by several "conceptual errors" that compel reversal. On closer examination, these "conceptual errors" turn out to be nothing more than findings of fact and legal explanations with which Allied-Signal disagrees, but which are not inconsistent with the reasoning adopted by this court